IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.  No.   09-CR-3457

BRAD AHRENSFIELD,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On January 23, 2011, the Government filed a Sealed Motion To Bifurcate Briefing Of Defendant's Motion To Dismiss For Alleged *Brady* Violation (Motion to Bifurcate) (Doc. No. 150).  Defendant Brad Ahrensfield filed a Response (Doc. No. 153) on January 26, 2011 and the Government filed a Reply (Doc. No. 156) on February 4, 2011.  Having considered the arguments raised by both parties as well as the applicable law, the Court concludes that the Government's Motion to Bifurcate should be granted and the parties should be instructed on the order in which the issues raised by Ahrensfield's Motion to Dismiss should be briefed.

## BACKGROUND

In December 2010, Ahrensfield was tried on one count of obstruction of justice stemming from statements Ahrensfield made to Shawn Bryan, the target of an undercover investigation. During the direct examination of Shawn Bryan, the Government impeached Bryan's testimony by reading from a transcript of an interview that the FBI had conducted with Bryan after Ahrensfield's first trial.[1]  Ahrensfield's counsel advised the Court that Ahrensfield had never

---

[1] At the first trial, Ahrensfield was acquitted on one count of making false statements and the jury hung on the obstruction of justice charge.

been provided with a copy of the transcript or a recording of the interview and that Ahrensfield was unaware that the FBI had interviewed Bryan following the first trial. Trial Tr. Vol. 2 at 216. The next morning, prior to the resumption of trial testimony, Ahrensfield filed a Motion to Dismiss With Prejudice Based On *Brady* Violation (Motion to Dismiss) (Doc. No. 121) asserting that the transcript of Bryan's interview contained *Brady* material, that the Government had improperly withheld the transcript, and that the indictment against Ahrensfield should be dismissed.  That morning, the Court held an evidentiary hearing, which involved the testimony of several witnesses, on the issue of whether the Government had provided the transcript to Ahrensfield. Because the Court needed to hear testimony from additional witnesses, the Court continued the evidentiary hearing. The following day, December 16, 2010, the jury returned a guilty verdict.

On December 19th, 2010 Ahrensfield filed a Supplemental Brief In Support Of His Motion To Dismiss Indictment With Prejudice Based On *Brady* Violation (Supplemental Brief) (Doc. No. 125).  In his Supplemental Brief, Ahrensfield asserted that the prosecutor in the case had a history of *Brady* violations that demonstrated that the Government had acted in bad faith. On January 12, 2011, Ahrensfield filed a Sealed Motion For Rule 17 Subpoena To Department Of Justice, Office Of Professional Responsibility And Disciplinary Records (Motion for Subpoena) (Doc. No. 146) asking the Court to issue an order allowing Ahrensfield to subpoena any disciplinary records related to *Brady* violations that the prosecutor was involved in during her career with the Department of Justice. Ahrensfield contends that he needs access to the disciplinary records, if any exist, to fully brief the issue of whether there is a pattern of misconduct that would demonstrate bad faith on behalf of the Government.

In its Motion to Bifurcate the Government contends that the Court does not have to reach

the questions of whether to dismiss the indictment and whether the prosecutor has a pattern of *Brady* violations unless the Court first finds that there was in fact a *Brady* violation. Thus, the Government requests that the Court bifurcate the briefing by having the parties first brief whether there has been a *Brady* violation and then, if the Court finds that there was a violation, have the parties separately brief whether the prosecutor acted in bad faith and whether dismissal is the proper remedy.  According to the Government, bifurcating the briefing in this manner would assist the Court in resolving the issue in an orderly and common sense fashion, would prevent the Court from reaching issues that are either moot or unripe, and would allow the parties to only have to address the "highly-charged and personal allegations" against the prosecutor if absolutely necessary.  Motion to Bifurcate at 5. The Government also requests that the Court defer ruling on Ahrensfield's Motion for Subpoena until after the Court has resolved whether a *Brady* violation occurred.

In his Response, Ahrensfield opposes bifurcating the briefing and contends that bifurcating the issues would preclude Ahrensfield from making a proper record in the event that an appeal is necessary.  In its Reply, the Government argues that Ahrensfield's concerns about preserving a record are unfounded because if the Court denies Ahrensfield's Motion to Dismiss, and if the Tenth Circuit were to reverse the Court's decision, the case would be remanded to the Court to determine the appropriate remedy for that violation.

## DISCUSSION

Ahrensfield contends that the Government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to provide Ahrensfield with a copy of the transcript and recording of Shawn Bryan's interview with the FBI.  "To establish a *Brady* violation, a defendant must demonstrate that (1) the prosecutor suppressed evidence; (2) the evidence was

3

favorable to the defendant as exculpatory or impeachment evidence; and (3) the evidence was material." *United States v. Walters*, 269 F.3d 1209 (10th Cir. 2001) (quotation marks omitted). Whether a prosecutor acted in good or bad faith is irrelevant as "negligent or inadvertent suppression of evidence is nevertheless suppression for *Brady* purposes." *Fero v. Kerby*, 39 F.3d 1462, 1472 (10th Cir. 1994). If the Court concludes that a *Brady* violation has occurred, the Court has discretion to fashion an appropriate remedy to cure the violation. *See United States v. Burke*, 571 F.3d 1048, 1055 (10th Cir. 2009) (noting that "[t]he choice of remedy is in the sound discretion of the district court").

      Ahrensfield argues that the appropriate remedy in this case is dismissal of the indictment against him.  Dismissal, however, is a strongly disfavored remedy.  In the past, the most severe sanction that the Tenth Circuit permitted a district court to impose for a *Brady* violation was a new trial.  *See United States v. Davis*, 578 F.2d 277 (10th Cir. 1978) (holding that "a violation of due process under *Brady* does not entitle a defendant to an acquittal, but only to a new trial in which the convicted defendant has access to the wrongfully withheld evidence"). Since then, however, the Tenth Circuit appears to have recognized that dismissal might be a permissible remedy, but that it is an extremely limited remedy reserved for flagrant abuses by the prosecution. *See United States v. Anderson*, 778 F.2d 602 (10th Cir. 1985) (noting that  "cases where an appellate court has upheld a district court's dismissal of an indictment because of alleged prosecutorial misconduct are few and far between"); and *United States v. Ellis*, 298 Fed. Appx. 752, 755 (10th Cir. 2008) (unpublished) (explaining that a case "should not be dismissed for a discovery violation in the absence of bad faith or prejudice").  The Tenth Circuit has noted that the Ninth Circuit permits the "dismissal of an indictment on the basis of prosecutorial misconduct . . . only if the misconduct is 'flagrant' and causes 'substantial prejudice' to the

4

defendant." *United States v. Dennison*, 891 F.2d 255, 260 (10th Cir. 1989).

While dismissal of an indictment is an extremely limited remedy, Ahrensfield argues that the remedy is appropriate in this case because the prosecutor acted in bad faith. Specifically, Ahrensfield contends that the prosecutor has a history of failing to comply with her *Brady* obligations in other cases, that this pattern indicates that the prosecutor acts recklessly with respect to her *Brady* obligations, and that the recklessness indicates that the prosecutor acted in bad faith. In support of this argument, Ahrensfield relies heavily on *Government of Virgin Islands v. Fahie*, 419 F.3d 249, 255 (3d Cir. 2005), a case where the Third Circuit Court of Appeals held that "reckless misconduct, if prejudicial, may sometimes warrant dismissal" because "[o]therwise, a prosecutor who sustains an erroneous view of her *Brady* obligations over time will be inadequately motivated to conform her understanding to the law."

The Government, however, argues that looking at a pattern of misconduct across a prosecutor's career is unprecedented. In reply, Ahrensfield directs the Court to a number of cases where courts have looked to past constitutional violations by prosecutors. For example, Ahrensfield cites to *United States v. Hasting*, 461 U.S. 499, 527 (U.S. 1983), where Justices Brennan and Marshall, concurring in part and dissenting in part with the majority opinion, noted that "[i]f Government prosecutors have engaged in a pattern and practice of intentionally violating defendants' constitutional rights, a court of appeals certainly might be justified in reversing a conviction, even if the error at issue is harmless, in an effort to deter future violations." Similarly, in *Jones v. Davis*, 835 F.2d 835, 838 (11th Cir. 1988), the Eleventh Circuit Court of Appeals noted that a defendant had proven that a district attorney's office had a pattern and practice of using peremptory challenges to strike African-Americans from jury venires by presenting the testimony of six criminal attorneys who had observed this conduct over

the course of their careers.  And, in *Ford v. Lockhart*, 861 F.Supp. 1447 (E.D. Ark. 1994), a United States District Court in the Eastern District of Arkansas noted that a prosecutor had a history of excluding African-Americans from participating as jurors throughout a number of cases.  Thus, Ahrensfield is correct that there is at least some precedent to support looking at a prosecutor's actions in previous cases to prove that the prosecutor acted unlawfully.

In fact, the Tenth Circuit has implicitly recognized that it is appropriate to look at a prosecutor's actions in prior cases.  In *Duckett v. Mullin*, the Tenth Circuit noted that it had chastised a prosecutor on multiple occasions for making improper comments during trials and had even reversed a conviction based on the prosecutor's conduct.  306 F.3d 982, 994 (10th Cir. 2002).  By taking notice of the prosecutor's past misconduct, the Tenth Circuit implicitly recognized that a pattern of misconduct can be shown by looking at a prosecutor's actions in prior cases.

Despite the fact that a pattern and practice of misconduct can be proven by looking at a prosecutor's actions in prior cases, one common element of all of the cases that address a pattern and practice of misconduct is that the prosecutor acted intentionally in the case being reviewed. For example, in *Jones* and *Ford* the prosecutors willfully and intentionally excluded African-American jurors on account of their race.  And in *Duckett*, the Tenth Circuit concluded that the prosecutor had *intentionally* made improper comments during the course of trial. Similarly, in *Fahie*, the Third Circuit noted that a case will only be dismissed when a prosecutor acts recklessly. 419 F.3d at 256.  Because recklessness is generally defined as including "an element of deliberateness—a *conscious* acceptance of a known, serious risk," even the Third Circuit's approach requires an element of intent.  *See Archuleta v. McShan*, 897 F.2d 495 (10th Cir. 1990). Thus, it appears that in order to look at whether the prosecutor in this case has a pattern and

practice of misconduct that would justify imposing dismissal as a sanction, the Court would be required to first determine whether the prosecutor acted either intentionally or with a deliberate disregard for her obligations under *Brady*. If the prosecutor did not act intentionally or recklessly in this case, then any pattern of misconduct would have no bearing on the applicable remedy.

Requiring Ahrensfield to demonstrate that the prosecutor act deliberately in this case, before the Court addresses whether there is a past pattern of *Brady* violations, is especially necessary in light of the strong disfavor in the Tenth Circuit for dismissal as a remedy for *Brady* violations. While a pattern and practice of *Brady* violations might justify dismissal in some cases, the Tenth Circuit is unlikely to permit such a remedy if the prosecutor acted in good faith. *See* Dennison, 891 F.2d at 260 (noting that the Tenth Circuit has never upheld a district court's dismissal of an indictment because of prosecutorial misconduct nor has the Tenth Circuit even "reviewed dismissal of an indictment by a district court on the basis of a violation by government counsel of discovery orders"); and *U.S. v. Wicker*, 848 F.2d 1059, 1060 (noting that "if a sanction is imposed, it should be the least severe sanction that will accomplish prompt and full compliance with the court's discovery orders") (quotation and alteration marks omitted). Thus, the Court concludes that the pattern and practice of the prosecutor is only relevant if the prosecutor either deliberately withheld *Brady* material or acted with reckless disregard to her *Brady* obligations. If the prosecutor acted in good faith, then any alleged pattern of *Brady* violations is irrelevant to the Court's determination of the appropriate remedy to apply in this case.

For that reason, the Court will require the briefing on Ahrensfield's Motion to Dismiss to proceed as follows. The initial briefing should address: (1) whether a *Brady* violation occurred;

(2) whether, if a violation occurred, the violation occurred despite the prosecutor's good faith attempts to comply with her obligations or the violation was a result of an intentional act by the prosecutor or the prosecutor's deliberate disregard for her *Brady* violations; and (3) the remedy that should be applied if a *Brady* violation occurred but the prosecutor acted in good faith with respect to her *Brady* obligations. If the Court concludes that a *Brady* violation occurred and that the prosecutor did not act in good faith, the Court will then order additional briefing regarding the alleged pattern and practice of misconduct.

     The Court wishes to emphasize that the good or bad faith of the prosecutor has no bearing on whether a *Brady* violation has occurred in this case. *See United States. v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998) (noting that "the term 'suppression,' in the Brady context, does not require a finding of a culpable state of mind" and that "good faith and bad faith . . . ha[s] no relevance if the government's conduct prejudices the outcome of the case") (quotation and alteration marks omitted). Thus, the Court is not requiring the parties to address whether the prosecutor acted in good faith as an element of whether a *Brady* violation occurred, but only as a prerequisite to the Court's review of whether the prosecutor has a pattern and practice of *Brady* violations. If the prosecutor acted in good faith in this case, then any history of *Brady* violations is irrelevant as dismissal would not serve the purpose of deterring future violations—the Court cannot deter a violation that occurred despite the prosecutor's good faith attempt to comply with her *Brady* obligations. *See United States v. Hasting*, 461 U.S. 499, 527 (1983) (noting that when a prosecutor intentionally engages in a pattern and practice of misconduct, dismissal of an indictment can be used to deter future unlawful behavior); *Fahie*, 419 F.3d at 256 (noting the prejudicial reckless misconduct may warrant dismissal because "[o]therwise, a prosecutor who sustains an erroneous view of her *Brady* violations over time will

be inadequately motivated to conform her understanding to the law").

Because the alleged pattern and practice of misconduct will only be relevant if the Court concludes that the prosecutor did not act in good faith with respect to her *Brady* obligations, the Court will deny Ahrensfield's Motion for Subpoena as it is premature. In the event that briefing on the pattern and practice issue is necessary, Ahrensfield can refile his Motion for Subpoena.

As the Court indicated in a letter to counsel dated January 27, 2011, Ahrensfield has two weeks from the date of this Memorandum Opinion and Order to file a consolidated motion regarding the alleged *Brady* violation. Thus, Ahrensfield's motion must be filed by March 11, 2011.

IT IS ORDERED THAT the United States' Sealed Motion To Bifurcate Briefing Of Defendant's Motion To Dismiss For Alleged *Brady* Violation (Doc. No. 150) is GRANTED in that the parties will only brief the pattern and practice issue if the Court concludes that the prosecutor did not act in good faith in this case.

IT IS FURTHER ORDERED that Ahrensfield's Sealed Motion For Rule 17 Subpoena To Department Of Justice, Office Of Professional Responsibility And Disciplinary Records (Doc. No. 146) is DENIED as premature.

_____
SENIOR UNITED STATES DISTRICT COURT JUDGE