IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

vs.                                                      No.     1:09-cr-03457

BRAD AHRENSFIELD,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

The government moves the Court to reconsider the Court's MEMORANDUM OPINION AND ORDER (Doc. No. 170) (*Brady* MOO), filed June 8, 2011, in which the Court denied Defendant Brad Ahrensfield's CONSOLIDATED MOTION TO DISMISS FOR BRADY/GIGLIO VIOLATIONS (Doc. No. 163) (*Brady* Motion).[1] The government asks the Court to revise the *Brady* MOO to reflect the contents of an email exchange between defense counsel and government counsel that was not presented to or considered by the Court prior to ruling on Ahrensfield's *Brady* Motion. The government explains that the newly-presented

---

[1]The government filed the UNITED STATES' MOTION TO RECONSIDER MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATED MOTIONS TO DISMISS FOR *BRADY/GIGLIO* VIOLATIONS (Doc. No. 180) (Motion to Reconsider) on September 2, 2011. Ahrensfield filed DEFENDANT BRAD AHRENSFIELD'S RESPONSE TO THE UNITED STATES' MOTION TO RECONSIDER MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATED MOTION TO DISMISS FOR *BRADY/GIGLIO* VIOLATIONS (Doc. No. 190) (Response to Motion to Reconsider) on September 16, 2011. The government filed the UNITED STATES' REPLY TO DEFENDANT'S RESPONSE TO MOTION TO RECONSIDER MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATED MOTION TO DISMISS FOR *BRADY/GIGLIO* VIOLATIONS (Doc. No. 193) on September 19, 2011.

information will not affect "the Court's ultimate decision denying the motion to dismiss" but argues that "the information will be of tremendous value in the event that Defendant appeals the decision." Motion to Reconsider at 1. Ahrensfield moves the Court to strike the government's Motion to Reconsider,[2] arguing that the email messages do not affect the Court's conclusion in the *Brady* MOO that the government suppressed exculpatory evidence. Motion to Strike at 1. Having considered the parties' arguments and the applicable law, the Court concludes that it should decline to grant both the government's Motion to Reconsider and Ahrensfield's Motion to Strike.

## BACKGROUND

In September 2009, Ahrensfield, who was an Albuquerque Police Department (APD) officer, learned from his fellow APD officer Ron Olivas that the APD and the Federal Bureau of Investigation (FBI) were conducting an undercover investigation targeting Ahrensfield's friend, Shawn Bryan, and Shawn Bryan's business, the Car Shop. *Brady* MOO at 3. Ahrensfield informed Shawn Bryan about the investigation and was subsequently arrested and charged with one count of obstruction of justice and one count of making false statements to FBI agents. *Id.* at 3-4. Ahrensfield was first tried in April 2010. *Id.* at 4. The jury acquitted Ahrensfield of making false statements to FBI agents but was unable to reach a verdict on the obstruction of justice count. *Id.*

---

[2]On September 6, 2011, Ahrensfield filed DEFENDANT BRAD AHRENSFIELD'S MOTION TO STRIKE UNITED STATES' MOTION TO RECONSIDER MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATED MOTION TO DISMISS FOR *BRADY/GIGLIO* VIOLATIONS (Doc. No. 183) (Motion to Strike), and on September 14, 2011, the government filed the UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE MOTION TO RECONSIDER (Doc. No. 188) (Response to Motion to Strike). Ahrensfield did not file a reply.

In December 2010, Ahrensfield was retried on one count of obstruction of justice. *Id.* On December 14, 2010, during the government's direct examination of Shawn Bryan at the second trial, the government impeached Shawn Bryan's testimony by reading from a transcript of an interview the FBI had conducted with Shawn Bryan on April 27, 2010, after the conclusion of Ahrensfield's first trial. *Id.* at 5. Defense counsel asked to see the interview transcript and informed the Court that the government had never provided defense counsel with a transcript or recording of the interview. *See* Doc. No. 151, Trial II Tr. at 216. The Court recessed while defense counsel reviewed the transcript, and the trial continued later that afternoon. *See Brady* MOO at 5.

The following day, on December 15, 2010, Ahrensfield filed a motion to dismiss, asserting that the transcript of Shawn Bryan's interview had been withheld by the government and contained *Brady* material. *Id.* Before resuming the trial that morning, the Court held an evidentiary hearing to determine whether the government had improperly withheld the transcript, and if so, whether the indictment against Ahrensfield should be dismissed due to the government's misconduct. *Id.* During the hearing, the Court learned that more witnesses would need to be called, continued the evidentiary hearing, and resumed the trial. *Id.* On December 16, 2010, the jury returned a guilty verdict. *See* Doc. No. 140. On December 20, 2011, the Court heard additional testimony regarding the alleged *Brady* violation and took Ahrensfield's motion to dismiss under advisement. *Brady* MOO at 6. Because Ahrensfield had filed a number of supplemental briefs and exhibits, the Court instructed Ahrensfield to file a consolidated motion regarding the alleged *Brady* violation. *Id.*

On March 11, 2011, Ahrensfield filed his *Brady* Motion, in which he argued that the government had failed to provide defense counsel with (1) the interview transcript, (2) a

3

transcript of a phone call Shawn Bryan made to the FBI prior to the interview, (3) audio recordings of the FBI interview and phone call, and (4) a laboratory report identifying as cocaine the substance obtained by law enforcement in a controlled drug purchase during the investigation of the Car Shop. *See id.*

On June 8, 2011, the Court filed its *Brady* MOO, concluding that there had not been a *Brady* violation and denying Ahrensfield's *Brady* Motion. "[T]o establish a *Brady* violation, a defendant must demonstrate that (1) the prosecutor suppressed evidence; (2) the evidence was favorable to the defendant as exculpatory or impeachment evidence; and (3) the evidence was material." *United States v. Walters*, 269 F.3d 1207, 1214 (10th Cir. 2001) (quotation marks and citation omitted). In analyzing Ahrensfield's *Brady* Motion, the Court began by noting that the parties disagreed as to "whether the prosecutor in fact suppressed the transcripts." *Brady* MOO at 8. The government asserted that it had made the transcripts available to Ahrensfield in the United States Attorney's office reception area long before the second trial, but defense counsel argued that the transcripts were not provided to the defense until the middle of the second trial. *Id.* at 8-9. The Court made factual findings based on the testimony of witnesses who testified at the evidentiary hearing and concluded that (1) the prosecutor did suppress the transcripts, albeit unintentionally, and (2) the transcripts were favorable to the defense. *Id.* at 12-13.

However, in analyzing whether the suppressed evidence was material, the Court noted that the issue of materiality was a "close and difficult" question. *Id.* at 13. Ahrensfield argued that during the FBI interview Shawn Bryan made several statements to FBI agents Drew McCandless and Marcus Washington that were material to Ahrensfield's defense, including that (1) Ahrensfield told Shawn Bryan only a rumor about the investigation, (2) Shawn Bryan learned

details of the investigation from Darren White, who had his wife Kathy White[3] send text messages to Shawn Bryan's wife, Erika Bryan, and (3) Shawn Bryan learned additional details of the investigation from Joe Hudson. *Id.* at 14. In his *Brady* Motion, Ahrensfield asserted that he could have used the FBI transcripts at trial to more throughly prepare for cross-examination of Shawn Bryan, Agent McCandless, Agent Washington, Joe Hudson, and Darren White; that he could have attempted to retrieve the text messages between Kathy White and Erika Bryan; and that he could have subpoenaed Erika Bryan and Kathy White to testify at trial about the content of the text messages. *Id.*

The Court concluded that the FBI transcripts were not material for the following reasons: (1) despite having a limited amount of time to review the transcripts, Ahrensfield's counsel used the transcripts at the second trial to conduct extensive cross-examination of Agent McCandless, Agent Washington, and Shawn Bryan, *id.* at 15; (2) the text messages were not material because the jury "heard a significant amount of testimony" demonstrating that Ahrensfield provided Shawn Bryan only vague details about the investigation and that Shawn Bryan had obtained the majority of the details from other sources, *id.* at 30; (3) the information in the transcripts concerning Joe Hudson was cumulative of other admitted evidence and therefore not material, *id.* at 31; and (4) that Ahrensfield had subpoenaed Darren White to testify at trial but chose not to call him to testify, *id.* at 32. The Court concluded that the government's suppression of the transcripts did not amount to a *Brady* violation because "Ahrensfield failed to meet his burden of showing that the transcripts were material." *Id.* at 8.

---

[3] It appears that Ms. White changed her name during the course of the proceedings from Kathy McConnely to Kathy White. The Court will refer to her by her married name, Kathy White. *See Brady* MOO at 14 n.3.

As for the audio recordings of Shawn Bryan's phone call and interview with the FBI, the Court questioned whether *Brady* applies to an audio recording in a situation where an accurate transcript of the recording already had been provided to the defense. *Id.* at 33. The Court concluded that, even if *Brady* did apply to the recordings, "the recordings were not material." *Id.* at 34. Finally, the Court concluded that although the government failed to produce the cocaine laboratory report, the report was neither favorable to Ahrensfield nor material. *Id.* at 36. Because none of the allegedly suppressed evidence was material, the Court denied Ahrensfield's *Brady* Motion. *Id.*

On September 2, 2011, the government filed its Motion to Reconsider, explaining that on August 30, 2011, Assistant United States Attorney Tara Neda found an archived email exchange between Ms. Neda and defense counsel that had taken place on May 5, 2010. Motion to Reconsider at 4. The government argues that this "newly-discovered" email exchange satisfied the government's obligations under *Brady* to disclose the substance of Shawn Bryan's interview with the FBI. *Id.* at 1, 6. The first email message, from Ahrensfield's attorney, Jason Bowles, to Ms. Neda, reads as follows:

> I received some information that I have not verified that Darren White through his girlfriend may have passed information regarding the investigation onto Shawn Bryan. I understand that Agents McCandless and Washington may have been informed of this. I stress that I have not verified any of that and I do not know if that is true or not but wanted to see if the FBI was looking into the matter. I understand that there may be numerous text messages between Erica Ruiz and Darren White's girlfriend or fiancée. Will you let me know if you are aware of this matter and whether the FBI is looking into it? I am not suggesting in the slightest that Darren did anything wrong, I just believe if it happened it could tend to exculpate Brad.

The second email message, from Ms. Neda to Mr. Bowles, responds as follows:

> Bryan apparently fired [his attorney] and came into FBI for an interview (I just got cd and have a copy for you, as well). During the interview, Bryan made a number of strange allegations (as he is prone to do) it was taped and I will disclose. For

6

example, he claimed that the APD burglarized his home - though, he claimed to the APD that the FBI did so. He also mentioned that Darren and his girlfriend talked to [sic] about the investigation - but, he claimed this happened well after Sept. 22. The fbi did interview Darren after Bryan's visit to FBI, but he said he has had no such conversations with Bryan. Bryan and Darren state that Darren was unaware of investigation before Bryan told Darren on Sept. 22. This is corroborated by APD.

*Id.* at Ex. 15.

On September 6, 2011, Ahrensfield filed a Motion to Strike the government's Motion to Reconsider, noting that the government filed its Motion to Reconsider a few days before Ahrensfield's sentencing hearing and requesting that the Court continue the sentencing hearing[4] to allow Ahrensfield fourteen days to respond to the Motion to Reconsider. Motion to Strike at 2; *see* D.N.M.LR-Cr. 47.8(a) ("A response must be served within fourteen (14) calendar days after service of the motion."). In the Motion to Strike, Ahrensfield requested a one hour hearing so he could "search email archives for other potentially pertinent emails . . . and subpoena AUSA Tara Neda to provide testimony to complete the record on this issue."[5] Motion to Strike at 2. Ahrensfield's counsel does not dispute that he received the email message from Ms. Neda but explains that he "completely forgot" the email exchange ever occurred. Response to Motion to Reconsider at 2.

On September 7, 2011, the Court held a telephone conference to discuss the pending motions. *See* ORDER (Doc. No. 186). Attorney Jason Bowles was present for the Defendant,

---

[4]On September 6, 2011, Ahrensfield also filed DEFENDANT BRAD AHRENSFIELD'S MOTION TO CONTINUE SENTENCING (Doc. No. 184).

[5]The Court notes that Ahrensfield did not renew his request for an evidentiary hearing when he filed his Response to Motion to Reconsider on September 16, 2011, and that Ahrensfield has informed the Court that defense counsel's computer was stolen after the government filed its Motion to Reconsider, making it impossible for defense counsel to search for archived email messages. *See* Response to Motion to Reconsider at 2 n.1.

and Assistant United States Attorney Tara Neda was present for the government. *Id.* The Court ordered that the sentencing hearing be continued until September 19, 2011, to allow Ahrensfield time to respond to the government's Motion to Reconsider and to allow the government time to respond to Ahrensfield's Motion to Strike. *See id.*

## DISCUSSION

**The government's Motion to Reconsider**

The Court must first determine what standard to apply when evaluating a motion to reconsider a ruling in a criminal case. Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Civil Procedure recognize a "motion to reconsider," and the government has not cited any legal authority for its position that the Court should rewrite portions of the *Brady* MOO to reflect the contents of the email exchange, which the government characterizes as "newly-discovered information." Motion to Reconsider at 1; *see* D.N.M.LR-Cr. 47.7 ("A motion, response or reply must cite authority in support of the legal positions advanced.").

However, courts in the Tenth Circuit have construed motions to reconsider as motions seeking relief under Federal Rule of Civil Procedure 60(b), which permits a court to "relieve a party" from an order if there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2); *see Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) (explaining that courts may construe a "motion to reconsider" as either a motion seeking relief under Rule 60(b) or a motion to alter or amend the judgment under Rule 59(e)); *see also Pueblo of Zuni v. United States*, 467 F. Supp. 2d 1114, 1116 (D.N.M. 2006) (explaining that a court may grant a motion to reconsider if new evidence has been discovered). Additionally, "[a]lthough the Federal Rules of Criminal Procedure do not include any provisions for a motion to reconsider,

courts in the Tenth Circuit have countenanced such a motion under the common law doctrine and considerations of judicial economy," applying a standard similar to that used in civil cases. *United States v. Sims*, 252 F. Supp. 2d 1255, 1260 (D.N.M. 2003); *see United States v. D'Armond*, 80 F. Supp. 2d 1157, 1170 (D. Kan. 1999) ("This court believes that the standards for evaluating a motion to reconsider in the civil context are relevant for evaluating a motion to reconsider in a criminal case. 'A motion to reconsider shall be based on (1) an intervening change in controlling law, (2) availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice.'" (citing D. Kan. Rule 7.3.)). "The decision whether to grant a motion to reconsider is committed to the sound discretion of the court." *Pueblo of Zuni*, 467 F. Supp. 2d at 1116.

Accordingly, in evaluating the government's Motion to Reconsider the Court will use the standard it would apply to a Rule 60(b) motion seeking relief from an order. "Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances." *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990). A party seeking Rule 60(b)(2) relief on the ground that there is newly-discovered evidence must show that "(1) the evidence was newly discovered since the [Court entered the order]; (2) [the moving party] was diligent in discovering the new evidence; (3) the newly discovered evidence [is not] merely cumulative or impeaching; (4) the newly discovered evidence [is] material; and (5) that . . . the newly discovered evidence [will] probably produce a different result." *Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1285 (10th Cir. 1994) (quotation and citation omitted) (second alteration in original).

In this case, the government ultimately prevailed on the *Brady* issues when the Court entered the *Brady* MOO denying Ahrensfield's *Brady* Motion. Nonetheless, the government asks

9

the Court to rewrite portions of the *Brady* MOO to reflect the government's position that the "newly-discovered" May 5, 2010, email message from Ms. Neda to Mr. Bowles satisfied the government's obligations under *Brady*. Motion to Reconsider at 1, 6. The government argues that the email exchange proves Ahrensfield knew the substance of Shawn Bryan's FBI interview in May 2010 and that *Brady* does not require the government to disclose exculpatory evidence "in a specific form or manner." *Id.* at 7 (quoting *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1011 (10th Cir. 1999) (holding that the government had adequately disclosed to defense counsel the substance of the defendant's prior statement to an officer where that officer had testified about the statement at a pretrial hearing and defense counsel had cross-examined the officer concerning the statement)).

Ahrensfield argues that the government's email message did not meet the government's burden to produce exculpatory evidence under *Brady*, the Federal Rules of Criminal Procedure, and the discovery order. Motion to Strike at 1. In Ahrensfield's view, the email exchange does not change the fact that the government suppressed transcripts of the FBI interview and phone call, recordings of the FBI interview and phone call, and the laboratory report, all of which remained in the government's custody. Response to Motion to Reconsider at 1-2; *see Banks v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995) ("[The prosecution's obligation to turn over the evidence in the first instance stands independent of the defendant's knowledge," and "the fact that defense counsel 'knew or should have known' about the [suppressed] information . . . is irrelevant to whether the prosecution had an obligation to disclose the information."). Additionally, Ahrensfield contends that the government's email message contained misleading information about the content and relevance of Shawn Bryan's interview with the FBI. Response to Motion to Reconsider at 3-4.

The Court concludes that the government, in its Motion to Reconsider, has not demonstrated any extraordinary circumstances warranting Rule 60(b) relief. The "newly-discovered" email messages between defense counsel and government counsel occurred on May 5, 2010, about seven months before Ahrensfield's second trial in December 2010. The email messages were stored on the government's computer all along, and through due diligence the government could have found the email messages and presented them to the Court for consideration at the December 2010 evidentiary hearing on Ahrensfield's *Brady* Motion. Hence, the email messages are not "newly-discovered" evidence under Rule 60(b)(2). *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (noting that neither a motion for reconsideration nor a Rule 60(b) motion is an appropriate vehicle "to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion"); *Sims*, 252 F. Supp. 2d at 1261 (explaining that a motion for reconsideration should be denied "if the movant's only purpose is to have the reviewing court revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally"). Moreover, granting the Motion to Reconsider will not change the Court's denial of Ahrensfield's *Brady* Motion. *See Joseph*, 17 F.3d at 1285 (explaining that Rule 60(b)(2) relief is appropriate only if newly-discovered evidence will "probably produce a different result").  Under the circumstances, the Court is under no obligation to reconsider its *Brady* MOO denying Ahrensfield's *Brady* Motion. *See United States v. Wiseman*, 172 F.3d 1196, 1207-08 (10th Cir. 1999) (finding no abuse of discretion when district court, after conducting an evidentiary hearing on the initial motion to suppress, denied the defendant's motion to reconsider the court's order denying the motion to suppress).

**Ahrensfield's Motion to Strike the Motion to Reconsider**

Having concluded that the Court should not grant the government's Motion to Reconsider, the Court must determine whether to strike the Motion to Reconsider. The government argues that the Court should deny Ahrensfield's Motion to Strike because striking the Motion to Reconsider would pervert the truth-seeking process and would be contrary to an attorney's ethical obligation under Rule 16-303(A)(1) NMRA to "correct a false statement of material fact or law previously made to the tribunal by the lawyer." *See* Response to Motion to Strike at 1.

Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Civil Procedure expressly provide a mechanism for a party to move the Court to strike a motion filed by the opposing party. The Federal Rules of Criminal Procedure do not mention "motions to strike" at all. Rule 12(f) of the Federal Rules of Civil Procedure provides that "[The court may strike from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." But a motion is not a "pleading" under the Rules of Civil Procedure. *See* Fed. R. Civ. P. 7(a) (defining the following to be pleadings: a complaint and an answer; an answer to a counterclaim or a cross claim; a third-party complaint; and a reply to an answer if the court orders one).

Even if the Rule 12(f) standard applies to Ahrensfield's Motion to Strike, Ahrensfield does not argue that the government's Motion to Reconsider is "redundant, immattrial, impertinent, or scandalous." Ahrensfield's Motion to Strike focuses on the timing of the Motion to Reconsider and Ahrensfield's inability to respond adequately before the sentencing hearing. Accordingly, Ahrensfield asked the Court either to strike the government's Motion to Reconsider or, in the alternative, to continue Ahrensfield's sentencing hearing and allow the

parties more time to brief. Motion to Strike at 2. The Court granted this alternative relief. In light of the relief the Court has already granted and the fact that the procedural rules do not provide a mechanism for one party to move the Court to strike another party's motion, the Court declines to grant Ahrensfield's Motion to Strike the government's Motion to Reconsider.

**Ahrensfield's Request for a Hearing**

In his Motion to Strike, Ahrensfield requested an evidentiary hearing on the government's Motion to Reconsider. Since then, both parties have had further opportunity to brief the Motion to Reconsider and Motion to Strike and to explain what purpose a hearing would serve. *See* D.N.M.LR-Cr. 47.10 (requiring parties to state "whether and why an evidentiary hearing is needed"). Ahrensfield has not renewed his request for a hearing, and the government has not requested a hearing. The Court concludes that there is no need for a hearing.

**IT IS ORDERED THAT** (1) the Court denies Ahrensfield's request for a hearing, (2) the Court declines to grant the government's Motion to Reconsider (Doc. No. 180), which, therefore, is denied, and (3) the Court declines to grant Defendant Ahrensfield's Motion to Strike (Doc. No. 183), which, therefore, is denied.

_____
    *James A. Parker*
SENIOR UNITED STATES DISTRICT COURT JUDGE